IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00808-WJM-NYW

KIM MITCHAM,

    Plaintiff,

v.

AMERICOLD LOGISTICS, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter is before the court on Defendant Americold Logistics, LLC's ("Defendant" or "Americold") Motion For Sanctions For Failure To Timely Produce Documents And For Spoliation Of Evidence And Memorandum In Support (the "Motion"). [#36,[1] filed Aug. 17, 2017]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated April 3, 2017 [#7], and the Memorandum dated August 18, 2017 [#38]. Oral argument will not materially assist this court in the resolution of the Motion. Accordingly, upon careful review of the Motion and associated briefing, the applicable case law, and the entire docket, this court GRANTS IN PART and DENIES IN PART the Motion for the reasons stated herein.

## BACKGROUND

Plaintiff Kim Mitcham ("Plaintiff" or "Ms. Mitcham") began working for Americold as a Human Resource Manager on or about October 12, 2015. [#22 at ¶ 12]. She alleges that

---

[1] [# _] is a convention I use to cite to documents in the ECF system. When citing to a transcript, I use the document number assigned by the ECF system, but cite to the page and line numbers as assigned in the original transcript.

Defendant has an "Open Door policy" whereby Defendant promised not to retaliate against its employees for lobbying complaints or concerns against upper management. [*Id.* at ¶ 20]. Pursuant to this policy, Plaintiff brought a complaint against Wendell Deboskie, the Director of Human Resources and Plaintiff's supervisor. [*Id.* at ¶¶ 33, 36]. Plaintiff complained that Mr. Deboskie mistreated her because she was a woman, as he did not treat her male colleagues in a similar manner. [*Id.* at ¶¶ 36–37]. Because of Mr. Deboskie's mistreatment, Plaintiff struggled to perform her job duties, and was encouraged to file a formal complaint with the "MySafeWorkplace" hotline. [*Id.* at ¶ 38]. Plaintiff waited to file a formal complaint in hopes that the situation with Mr. Deboskie would improve; however, upon informing the corporate director of Human Resources of Mr. Deboskie's behavior, Plaintiff alleges that Mr. Deboskie became even more hostile towards her. *See* [*id.* at ¶¶ 40–42].

On October 3, 2016, Plaintiff filed a formal complaint against Mr. Deboskie with the "MySafeWorkplace" hotline. [*Id.* at ¶ 44]. Not soon after, an Americold representative emailed its Human Resource staff that Plaintiff was no longer employed with Americold. [*Id.* at ¶ 49]. Plaintiff alleges that she did not resign, despite Defendant's contention to the contrary, but was "involuntarily terminated." Plaintiff alleges that she did not receive any explanation for her firing, but alleges that it came on the heels of her "MySafeWorkplace" complaint. [*Id.* at ¶¶ 52–54]. Following her termination, Plaintiff sought compensation for her unused vacation and her "extra shift bonuses." [*Id.* at ¶¶ 32–34]. Defendant denied Plaintiff's requests. Plaintiff alleges, however, that her male colleagues received their "extra shift bonuses." [*Id.* at ¶¶ 30–34].

Plaintiff then initiated this action by filing her Complaint in the Denver County District Court on March 7, 2017. [#1]. Ms. Mitcham's Complaint asserted claims against Americold for (1) negligent and intentional misrepresentation; (2) breach of contract, implied contract, and/or

quasi-contract; and (3) violations of the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101 *et seq.* [#3]. Americold removed this action on March 31, 2017, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332. [#1]. Following removal, Plaintiff filed her First Amended Complaint [#9] and then Second Amended Complaint ("SAC") [#22], the operative complaint in this matter. Pursuant to the SAC, the operative claims in this matter include: (1) sex discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; (2) sex discrimination and retaliation in violation of Colorado's Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401 *et seq.*; (3) negligent and intentional misrepresentation; (4) breach of contract, implied contract, and/or quasi-contract; and (5) violations of the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101 *et seq.* [#22].

On May 8, 2017, the undersigned held a Scheduling Conference, setting a pre-trial discovery schedule in this matter. [#15]. This included a discovery deadline of September 29, 2017. [#16]. Since the Scheduling Conference, the Parties have appeared before this court for several informal discovery dispute conferences. *See* [#29; #34; #39]. At the August 11, 2017 informal discovery dispute conference, the Parties discussed reopening Plaintiff's deposition given the recent production of a scanned copy of Plaintiff's journal—it is undisputed that Plaintiff destroyed the original. [#39]. Defendant explained that Plaintiff did not produce her journal with her initial disclosures sent on May 1, 2017. *See* [#37 at ¶ 4]. Further, that Americold requested any "handwritten note, recorded communications, calendars, journals, diaries, logs, and the like" that related to this matter, but that Plaintiff responded that she had produced all such documents. *See* [#36-1 at 16]. Defendant then followed up with Plaintiff's counsel to ensure that any "notes or diary" regarding her allegations in this matter had been produced, especially in light of her detailed chronology of events provided in response to

3

Interrogatory No. 9. [#36-2 at 2]. Plaintiff's counsel again responded that Plaintiff had produced all documents, and suggested that Defendant's Denver counsel may have misplaced certain documents. [*Id.*].

At Plaintiff's deposition on July 13, 2017, Plaintiff disclosed that she kept a "journal" to document all conversations she has had regarding this matter so that she could recall those conversations in the future should the need present itself. [#36-4 at 100:9–14]. Ms. Mitcham also testified that she scanned the original copy of the journal and submitted it to her attorney, and then she shredded the original copy. *See* [*id.* at 101:9–14, 102:6–10, 102:15–20]; *but see* [#40-3 at 289:8–25]. Further, when presented with her produced documents, Plaintiff testified that her journal was not among those documents. [*Id.* at 148:14–18]. Plaintiff then produced a scanned copy of the journal on July 15, 2017, after the completion of her deposition. [#37 at ¶ 9].

During the August 11 informal discovery dispute conference, Plaintiff indicated that she agreed to "resume" her deposition specifically to discuss her notebook. [#39]. Defendant indicated that it would seek sanctions for Plaintiff's failure to produce the notebook. [*Id.*]. Pursuant to this court's direction, Defendant filed the instant Motion on August 18, 2017. *See* [#36]. Defendant seeks fees and expenses incurred by having to re-depose Plaintiff and for filing the instant Motion, as well as an adverse inference instruction under Rules 37(a) and (c) of the Federal Rules of Civil Procedure. [*Id.*]. Plaintiff filed a Response and Defendant a Reply. [#40; #41]. The Motion is ripe for resolution.

## ANALYSIS

The Federal Rules of Civil Procedure provide for discovery procedures that seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging

discovery of information. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 619 (D. Colo. 2007) (citation omitted). To accomplish these objectives, Rule 26(a)(1) requires parties to disclose certain information without awaiting a formal discovery request to (1) accelerate the exchange of basic information, and (2) "provide an opposing party with information essential to the proper litigation of all relevant facts[.]" *Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 663 (D. Colo. 2015). Rule 26(e)(1) provides that a party must supplement its disclosure(s) and response(s) in a timely manner if the party learns that the response(s) or disclosure(s) are incomplete or incorrect in some material respect, or by court order. Fed. R. Civ. P. 26(e)(1)(A)–(B).

Rule 26(b)(1) defines the scope of permissible discovery, permitting discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). To protect each party's ability to participate in meaningful discovery, putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation. *See Cache La Poudre Feeds*, 244 F.R.D. at 620. Rule 37 provides sanctions for the destruction or loss of evidence. *E.E.O.C. v. Dillon Cos., Inc.*, 839 F. Supp. 2d 1141, 1144 (D. Colo. 2011) ("*Dillon*"). "As a general rule, the trial court acts with discretion in imposing sanctions for abuse of discovery under Rule 37, [but] the court [also] has inherent power to impose sanctions for the destruction or loss of evidence." *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1158–59 (D. Colo. 2015) (internal citations omitted); Fed. R. Civ. P. 37(c)(1) (providing for sanctions for a party's failure to provide information or witnesses as required under Rules 26(a) or (e)).

### I. Failure to Disclose Plaintiff's Journal

Defendant first moves for sanctions because Plaintiff failed to disclose her journal with her May 1 initial disclosures or in response to Defendant's first Rule 34 request for production of documents. [#36 at 6; #41 at 2]. Further, both Plaintiff and her counsel certified under Rule 26(g) that Plaintiff's initial disclosures and responses were complete and accurate; however, a "minimal inquiry" by Plaintiff's counsel would have revealed the existence of the journal and required its production. [#36 at 6–7]. But because of Plaintiff's and her counsel's shortcomings, Defendant was without the journal during Plaintiff's deposition. According to Defendant, Plaintiff should thus bear the costs of reopening her deposition as well as Defendant's fees and expenses in taking the deposition and filing the instant Motion. [*Id.* at 7–8; #41 at 2–4]. Plaintiff does not respond to these arguments, but appeared to concede during the August 11 informal discovery dispute conference that re-opening Ms. Mitcham's deposition to discuss the notebook was appropriate.

This court has "broad discretion to determine whether a Rule 26 violation is 'substantially justified' or harmless." *Alvariza v. Home Depot*, 241 F.R.D. 663, 665 (D. Colo. 2007) (citation omitted). Several factors guide the court's determination: "(1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 933 (D. Colo. 2017) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). Neither party addresses these factors explicitly. However, it is undisputed that a Rule 26 violation occurred.

In considering the factors as set forth above, this court finds that while the Rule 26 violation may be cured to some extent (as discussed in more detail below), Ms. Mitcham's

failure to disclose the notebook in a timely fashion as part of her Initial Disclosures or in response to written discovery was not substantially justified. Indeed, Ms. Mitcham offers no, and this court cannot itself ascertain, a plausible explanation that Plaintiff was unaware of the notebook or its relevance to this instant action. This court further notes that Plaintiff invoked the assistance of the court on numerous occasions to obtain the discovery, including the scheduling of depositions, which she required to prosecute the case. Nonetheless, it appears that Ms. Mitcham was withholding information (whether intentionally or not) that has hindered the progress of discovery—discovery that is set to close on September 29, 2017. This court now turns to the Parties' spoliation arguments—the crux of the instant Motion.

## II.   Spoliation of Plaintiff's Journal

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Giblin v. Sliemers*, 147 F. Supp. 3d 1207, 1214 (D. Colo. 2015) (internal quotation marks and citation omitted). "A spoliation sanction is proper where: '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015) (quoting *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (further citations omitted)). The bad faith destruction of material "relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case") (citation omitted); *see also Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992) (identifying several factors for the court's

consideration in determining the appropriate severity of sanctions).

A. **Duty to Preserve**

It is axiomatic that the filing of a lawsuit triggers a duty to preserve; however, this obligation may arise earlier if a party has notice that future litigation is likely. *See Estate of Vallina v. Cty. of Teller Sheriff's Office*, No. 15–cv–01802–RM–STV, 2017 WL 1154032, at *5 (D. Colo. Mar. 28, 2017) (citation omitted). That is, "a party's duty to preserve arises when it has notice that the documents might be relevant to a reasonably-defined future litigation." *Zbylski*, 154 F. Supp. 3d at 1164. This determination depends on the particular facts of the case. *Cache La Poudre*, 244 F.R.D. at 621. If such a duty exists, the inquiry into whether a party has honored its duty is one of reasonableness under the circumstances. *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 613 (S.D. Tex. 2010).

Here, there is some ambiguity as to *when* Ms. Mitcham destroyed the original copy of her journal. *Compare* [#36-4 at 101:9–14, 102:6–10, 102:15–20 (testifying that she shredded the original journal after filing this lawsuit] *with* [#40-3 at 289:8–25 (testifying that she shredded the original journal within a week of losing her job)].[2] Nevertheless, this court agrees with Americold that, regardless of when Ms. Mitcham destroyed the original journal, she was on notice that the journal might be relevant to a reasonably-defined future litigation. [#36 at 10–11; #41 at 5–6].

Ms. Mitcham testified that, while still employed with Americold, she began emailing herself company emails and other documents to keep records of her issues with Mr. Deboskie,

---

[2] In her deposition testimony cited by Plaintiff [#40 at 10], it appears Plaintiff misspoke that she "brought her journal home on September 3[] . . . because [she] no longer had a job[.]" [#36-2 at 289:2–5]. The SAC alleges that she was terminated on October 3, 2016 [#22 at ¶ 49], and earlier in her deposition she testified that she brought the journal home on October 3, *see* [#36-4 at 100:22–24 (Q: "Is that the notebook you removed from your office on October 3, 2016?" A: "Yes."). Thus, this court presumes that, at the earliest, Plaintiff destroyed her original journal within a week after October 3.

i.e., the "harassment and . . . the lawsuit claims." [#36-4 at 17:1–8, 17:22–18:11, 18:16–19, 21:6–24, 309:25–310:4]. Also, that she began keeping a journal covering her first day of work with Americold to her last day of work—something she has done throughout her career. [*Id.* at 100:10–14, 102:2–5, 148:21–23]. The journal included Ms. Mitcham's transcribed notes of her conversations with Americold employees, including Mr. Deboskie, her supervisor she alleges discriminated against her. [*Id.* at 100:25–101:6]. Following her termination, Plaintiff scanned the original journal, sent the scanned copy to her attorney, and then shredded the original. *See* [*id.* at 101:7–14, 102:6–20, 288:22–289:25].

Plaintiff argues that her shredding the original journal does not constitute destruction, because she "kept a journal <u>in the ordinary court of business</u> and transferred it to computerized form <u>as a matter of routine</u>." [#40 at 5 (emphasis in original)]. Plaintiff continues that this satisfies the requirements of Rule 34(b)(2)(E), and that she timely supplemented her incomplete discovery responses with the scanned journal. [*Id.* at 5–6]. These arguments are unavailing. Plaintiff's original journal does not constitute electronically stored information; thus, Rule 34(b)(2)(E) is inapplicable. And, as mentioned above, a Rule 26 violation occurred.

Plaintiff also argues that she did not contemplate filing suit at the time she destroyed her original journal; rather, she merely wanted "an attorney to write a letter[] . . . to communicate with management and try to get some clarity." [#40 at 9–10; #40-2 at ¶ 7]. However, as Defendant notes, Mr. Olsen's October 4, 2016 letter appears to do more than seek clarification from Defendant but, rather, that Plaintiff believes Defendant illegally discriminated and retaliated against her, and warned that further retaliation is "forbidden by federal and Colorado law." [#36-6 at 3]; *cf. Cache La Poudre*, 244 F.R.D. at 622 (holding the letter the plaintiff's counsel sent defendant did not trigger its duty to preserve, because the letter merely informed the

defendant of the plaintiff's rights and sought to resolve the matter without litigation). Further, as explained, the inquiry is not whether a party contemplates litigation but whether the party has "notice that the documents might be relevant to a reasonably-defined future litigation." *Zbylski*, 154 F. Supp. 3d at 1164. By Ms. Mitcham's own testimony, she was documenting alleged discriminatory conduct by Mr. Deboskie, and hired a lawyer within a day of being terminated. Thus, it is immaterial that Plaintiff did not actually file suit until five months after her termination in March 2017. *See* [#40 at 10–14]. Based on the facts presented, Ms. Mitcham had a duty to preserve the original journal, whether she destroyed it within a week of her termination or after initiating this lawsuit.

Additionally, Plaintiff abdicated that duty by shredding the original. It is clear that Plaintiff retained counsel the day after her termination and that, at this point, had not yet destroyed her original journal. Though Plaintiff stresses the fact that the scanned copy is just as good as the original, I respectfully disagree. First and foremost, there is no way for this court or the Parties to independently confirm that the scanned copy includes all the pages of the original journal. There is also no opportunity for the court or the Parties to determine from the handwriting, the ink, or otherwise if there are timing differences as to when certain entries were written. Therefore, this court concludes that the destruction of the original was unreasonable under the circumstances, because Ms. Mitcham retained counsel *prior* to shredding the original, and then scanned and sent a copy of the original to Mr. Olsen at his behest. *See* [#36-4 at 102:6–17]. At this point, it should have been clear that Ms. Mitcham needed to preserve the original, or counsel for Plaintiff should have specifically advised her of such.

B.  **Prejudice to Defendant**

In addition to establishing that Ms. Mitcham had a duty to preserve evidence, Defendant

must also demonstrate that it was prejudiced by Plaintiff's destruction of the original journal. *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). "When considering whether the spoliation was prejudicial, a court must first determine whether the evidence would be relevant to an issue at trial." *Giblin*, 147 F. Supp. 3d at 1215 (internal quotation marks and citation omitted). "The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996) (internal brackets, citations, and quotation marks omitted).

Defendant argues that Plaintiff's destruction of the original journal "prevents [it] from challenging Plaintiff's testimony about the creation, completeness[,] or accuracy of the journal." [#36 at 12]. Specifically, there is no way for Defendant to know if: (1) the scanned journal is the same journal Plaintiff removed from her office on October 3, given the inconsistencies between Plaintiff's description of the journal and the scanned copy actually produced; (2) the scanned journal is complete, i.e., have pages been added or removed; (3) the scanned journal has been annotated or altered; and (4) the entries were actually contemporaneously made, as a black and white photocopy does not allow for forensic testing of varying ink colors, impressions, or age. [*Id.* at 12–13; #41 at 8]. Further, Defendant contends that Plaintiff's testimony as to the journal's contents does not correspond with the scanned journal's entries; that is, there are only a handful of entries regarding Mr. Deboskie, contrary to Plaintiff's testimony. [#36 at 13]. Naturally, Plaintiff responds that Americold fails to demonstrate that it was prejudiced by "an exact computerized copy" of the journal. [#40 at 15].

To state a prima facie sex discrimination claim, Ms. Mitcham must establish (1) she is a

member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her position with Americold; and (4) she was treated less favorably than her male co-workers. *See Turner*, 563 F.3d at 1142. Plaintiff's retaliation claim requires a showing: "(1) [] she engaged in protected opposition to discrimination; (2) [] she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000). Plaintiff's CADA claim is subject to these same standards. *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010).

Here, Plaintiff testified that her original journal contained her transcribed notes of conversations and interactions she had with Mr. Deboskie, including his alleged discrimination against her. [#36-4 at 17:1–8, 17:22–18:11, 18:16–19, 21:6–24, 309:25–310:4]. Further, that these notes were contemporaneously recorded. Certainly, such evidence is relevant to an issue at trial. *See Dillon*, 839 F. Supp. 2d at 1144.

This court also agrees that Plaintiff's destruction of the original journal prejudiced Defendant given that Defendant could not inspect the journal in its original form. *Cf. Sedrati v. Allstate Life Ins. Co.*, 185 F.R.D. 388, 393 (M.D. Ga. 1998) (holding that the defendant's destructive fingerprint analyses performed on the original document prejudiced the plaintiff, because the plaintiff's expert could not "duplicate the conditions of the original documents and account for the existence—or absence—of [the plaintiff's] fingerprints on them."). While not binding, this court finds *Leon v. IDX Systems Corporation* persuasive on this point. 464 F.3d 951 (9th Cir. 2006). In *Leon*, Mauricio Leon filed suit against his former employer IDX Systems Corporation ("IDX") after IDX placed him on unpaid leave and sought to terminate him. *Id.* at 955. Mr. Leon alleged that IDX terminated him in retaliation for certain whistle-blowing

activities in violation of Title VII, among other statutory and state law claims. *Id.* at 955–56. At some point, IDX sought to retrieve Mr. Leon's IDX-issued laptop, but when Mr. Leon returned the laptop, IDX's computer forensics expert concluded that Mr. Leon had deleted 2,200 files from its hard drive. *Id.* at 956. Mr. Leon even admitted at his deposition that he deleted the files and then wrote a program to "wipe" the deleted files from the hard drive; he testified, however, that he did so mainly to protect his privacy. *Id.* at 956, 959. The United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") upheld the district court's dismissal of Mr. Leon's lawsuit for despoliation of evidence. In doing so, the Ninth Circuit held that Mr. Leon was on notice that these personal files were potentially relevant to his claims, and that their destruction prejudiced IDX in its defense of the lawsuit. *Id.* at 960.

Here, though Plaintiff produced a scanned copy of the journal unlike the complete deletion in *Leon*, the contents of the original journal contained evidence relevant to Americold's defense of this lawsuit. Further, I respectfully agree with Americold that production of the scanned copy does not necessarily provide Americold an opportunity to meaningful review the journal's contents. There is no way for Americold to understand whether Plaintiff's notes were in fact contemporaneous, annotated, altered, or complete, given that Defendant received only a black and white photocopy. Defendant is now limited to Ms. Mitcham's testimony about the contents of the journal and its accuracy, having been deprived the ability to examine the original. *Cf. Dillon*, 839 F. Supp. 2d at 1145 (holding in an ADA discrimination case that the plaintiff was prejudiced by the defendant's loss of the master copy of a video tape and its three copies that depicted the alleged incident leading to the employee's termination, when the defendant planned to call witnesses to testify as to the tapes' contents); *Grady v. Brodersen*, No. 13–cv–00752–REB–NYW, 2015 WL 1384371, at *4–5 (D. Colo. Mar. 23, 2015).

C. **Sanctions**

In addition to fees and costs associated with bringing the instant Motion and reopening Plaintiff's deposition, Defendant also requests an adverse inference instruction should this case go to trial. [#36 at 16]. Alternatively, Defendant seeks to cross-examine Plaintiff before the jury regarding her destruction of the original journal. [*Id.* at 16–17]. Under either scenario, Defendant requests that Plaintiff and her witnesses be precluded from testifying about the journal's contents as corroborating evidence, so as to uphold the effectiveness of an adverse inference instruction. [*Id.* at 17].

As explained, "courts require evidence of intentional destruction or bad faith before a litigant is entitled to a spoliation instruction." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008) ("An adverse inference is a powerful sanction as it brands one party as a bad actor and necessarily opens the door to a certain degree of speculation by the jury" (internal quotation marks and citation omitted)). The court is within its discretion, however, to impose lesser sanctions based on the culpability of the destructing party. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 862 (10th Cir. 2005); *Gates Rubber Co.*, 167 F.R.D. at 102 (observing that the *Ehrenhaus* factors should be considered even in cases that do not involve dispositive sanctions).

Defendant argues that Plaintiff destroyed the original journal in bad faith because, even if she had no "evil intent," she and her counsel failed to take reasonable steps to preserve it. [#36 at 14–15]. It is clear that Plaintiff intentionally destroyed the original journal after she made a scanned copy because she believed the journal contained sensitive information about other individuals not party to or associated with this action. This reasoning seems at odds with Plaintiff's assertion that the copy is an exact duplicate of the original; the court presumes that if

14

Plaintiff is accurate that the scanned copy is an exact duplicate of the original, the same sensitive information about which Plaintiff was concerned would appear in identical form in the scanned copy. However, without the benefit of a more complete record, there is insufficient evidence for this court to determine the scope and extent of any prejudice to Defendant arising from Ms. Mitcham's destruction. Accordingly, under the circumstances, I respectfully conclude that an adverse inference instruction or request to cross-examine Ms. Mitcham about the spoliation is not warranted at this time.[3] Rather, Plaintiff will be responsible for Defendant's reasonable attorney fees and costs associated with the taking of Plaintiff's re-opened deposition for an additional two (2) hours except that Plaintiff will not be responsible for any travel costs associated with Defendant's lead counsel traveling to Denver to take this additional deposition, given that Defendant has local counsel in Denver. Lead counsel may, should he so choose, to appear telephonically or via videoconference at his expense. Fed. R. Civ. P. 30(b)(4).

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant Americold Logistics, LLC's Motion For Sanctions For Failure To Timely Produce Documents And For Spoliation Of Evidence And Memorandum In Support [#36] is **GRANTED IN PART and DENIED IN PART**;

(2) Defendant is **GRANTED** leave to re-open Plaintiff's deposition for an additional two (2) hours to examine Plaintiff about the journal;

(3) Defendant's request for fees and expenses associated with the filing of the instant Motion and additional two (2) hour deposition of is **GRANTED IN PART and DENIED IN**

---

[3] To the extent that Defendant is able to establish specific instances of prejudice resulting from the loss of the original journal that is not cured through the production of a copy of the journal and Ms. Mitcham's renewed deposition, it may file an appropriate motion for sanctions at that time.

**PART**.  Plaintiff shall bear the costs and reasonable fees associated with the taking of an additional two (2) hour deposition of Plaintiff, excluding any travel costs by counsel; and

(4) All other requests for relief, including but not limited to Defendant's request for an adverse inference instruction and fees and costs associated with the filing of this instant Motion, are **DENIED**.

DATED: September 20, 2017

BY THE COURT:

s/ Nina Y. Wang_____
Nina Y. Wang
United States Magistrate Judge